Ronald J. Dreher
NV Bar No. 15726
DREHER LAW
P.O. Box 6494
Reno, NV 89513
Telephone: (775) 846-9804
ron@dreherlaw.net
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF NEVADA

CRYSTAL JACKSON,

    Plaintiff,

  vs.

WASHOE COUNTY SCHOOL
DISTRICT, and WASHOE EDUCATION
ASSOCIATION, and TRISTAN
MCELHANY, an individual, and
KRISTOPHER HACKBUSH,
an individual, and DOES I-X,

    Defendants.
_____/

Case No.: 3:25-cv-00748

**FIRST AMENDED COMPLAINT
AND JURY DEMAND**

  **COMES NOW** Plaintiff CRYSTAL JACKSON, by and through her undersigned attorney, hereby files her First Amended Complaint against Defendant WASHOE COUNTY SCHOOL DISTRICT, Defendant WASHOE EDUCATION ASSOCIATION, Defendant TRISTAN MCELHANY, an individual, Defendant KRISTOPHER HACKBUSH, and individual, and Defendants DOES I-X.

/ / /

/ / /

-1-

**Parties and Jury Demand**

1. Plaintiff Crystal Jackson at all times relevant was a resident of Nevada and was employed by Defendant Washoe County School District in northern Nevada, i.e., in the City of Reno, since April 2014. Most, or all, of the acts, statements and omissions alleged herein occurred in northern Nevada. Plaintiff hereby requests a jury trial relative to all triable issues.

2. Defendant Washoe County School District ("District") is an established political entity, i.e., a local school district incorporated in the State of Nevada. At all times relevant Defendant District employed in excess of 100 persons on a full-time basis. Defendant conducts the normal business activities associated with running a school district area. Defendant is located in northern Nevada.

3. Defendant Washoe Education Association ("WEA") is an employee organization as defined in NRS 288.040 and maintains offices in the City of Reno. WEA is the recognized bargaining unit for the teachers at the District. At all times relevant, Plaintiff was a dues-paying member in good standing in the WEA.

4. Defendant Tristan McElhany ("McElhany") is a local government employee as defined in NRS 288.050 and is employed by the District. McElhany, at all times relevant, was Plaintiff's direct supervisor.

5. Defendant Kristopher Hackbush ("Hackbush") is a local government employee as defined in NRS 288.050 and is employed by the District. Hackbush, at all times relevant, was Plaintiff's administrative supervisor.

6. Plaintiff is informed and believes that at all times relevant, Defendants identified as DOES I-X Inclusive were agents, employees, and/or representatives of each other and caused injuries and damages to her alleged herein. When Plaintiff discovers the identities of these

Doe defendant(s), and evidence supporting causes of action sounding in conspiracy, she will seek leave of Court so as to amend this Complaint and Jury Demand and thereby hold those persons legally accountable.

## Venue

7. This Court has venue over this action because all, or almost all, acts, statements and omissions alleged herein occurred in Nevada; Defendants are located in Nevada; and the District and WEA conduct business in Nevada. This Court has venue pursuant to 42 U.S.C. 2000e-5(f)(3).

## Jurisdiction

8.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 because this matter involves a federal question. This matter is brought pursuant to and alleges violations of the American with Disabilities Act of 1990, as Amended (ADAA), 42 U.S.C. § 12101, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, 42 U.S.C. § 2000e-2(a)(1) as well as allegations of violations of 42 U.S.C. §1983. This Court also has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367(a).

## Procedural Statement

9. On June 9, 2025, Plaintiff filed her charge alleging employment discrimination against the District with the Equal Employment Opportunity Commission, ("EEOC").  Said charge was assigned EEOC number 550-2025-02106.

10. Plaintiff obtained a Notice of Right to Sue against the District from the EEOC on September 25, 2025, and fewer than 90 days elapsed prior to her filing her Complaint (ECF No. 1).

11. On September 26, 2025, Plaintiff filed her charge alleging employment discrimination against the WEA with the EEOC. Said charge was assigned EEOC number 550-2025-03132.

12. Plaintiff obtained a Notice of Right to Sue against the WEA from the EEOC on March 2, 2026, and fewer than 90 days have elapsed since she received same.

13. This Complaint and Jury Demand is timely filed in accord with the Notices of Right to Sue.

14. Plaintiff is a qualified individual with a disability under 42 U.S.C. § 12101, et seq. This disability substantially limits one or more of Plaintiff's major life activities. Plaintiff was able to perform the essential functions of her job, with or without a reasonable accommodation, and she performed her job functions satisfactorily.

## **RELEVANT FACTS**

15. Plaintiff, a Black female, was hired by the District as a CLS Aide in 2014. After completing her teaching certifications, Plaintiff was hired as a teacher in 2016 and was eventually promoted to the position of Dean at Hug High School ("Hug") in the 2021-2022 school year.

16. While there were two open Dean positions at Hug in 2021, only one was permanent as the other was a temporary funded position. Plaintiff was given the permanent position due to her excellent performance, and the Principal and Assistant Principal communicated to her that she had earned the permanent position through her hard work and dedication.

17. Plaintiff has received highly effective ratings for the last four years, which is the highest rating available to a school district employee, as well as numerous awards for her performance.

18. Due to these highly effective ratings, Plaintiff is exempted by NRS 391.690(3) from detailed evaluations as her performance has clearly demonstrated she is qualified for her position.

19. As early as the summer of 2023, Plaintiff brought her concerns about the treatment she was experiencing based on her sex and race to Hug Principal Tristan McElhany, a White male. At this Plaintiff advised McElhany that she believed she was experiencing disparate treatment from others in the form of comments ("n-word" used in administrative meetings) as well as being segregated from her counterparts by being the only administrator assigned to an office on the second floor while all others were assigned to the first floor. These concerns went largely unaddressed, and Plaintiff was basically left to fend for herself in dealing with her concerns.

20. On February 4, 2025, Plaintiff reiterated to McElhany that she feels discriminated against based on her race and included in an email in which she stated the following: "To me, it seems like other people's concerns, thoughts, ideas are valuable except for mine-- the only Black female on your admin 'team.'" McElhany took no steps to address Plaintiff's concerns that she was being discriminated against in the terms and conditions of her employment because of her race. Rather, McElhany made it clear that he could not or would not address the issues.

21. Following this inaction, Plaintiff was forced to request that a formal investigation be launched by the District, which she did on February 14, 2025. This request went

unanswered, and instead Plaintiff was "encouraged" to meet with area superintendent Kris Hackbush.

22. On February 18, 2025, at Hackbush's request, Plaintiff met with him to discuss the workplace climate and culture at Hug. During this meeting, Plaintiff informed Hackbush about the hostile work environment created by Assistant Principal Melisa Chavez, which exacerbated her disabilities, and the failure of the District to respond to her February 14 email.

23. Plaintiff clearly explained to Hackbush that she suffers from disabilities, and the situation she was forced to endure by remaining under Ms. Chavez's supervision was only making it worse. Hackbush took no action to engage in the interactive process with Plaintiff, nor did he advise her that she would need to complete paperwork to obtain an accommodation.

24. During this meeting, Hackbusch assured Plaintiff that the meeting was confidential and that no disciplinary actions would follow. In addition, Hackbush asked Plaintiff if she had a temper. When Plaintiff questioned why he was asking her this, Hackbusch responded that his wife is from the Middle East, and she has quite the temper similar to Plaintiff. As would any reasonable person, Plaintiff took this as a micro aggression and offensive as Hackbush was making a stereotypical statement that all non-White women have tempers and/or are too emotional.

25. Despite Hackbush's assurances, shortly after the conclusion of this meeting, Plaintiff received Investigatory Due Process ("IDP") notice regarding an allegation that referenced her email, which she had shared with the District just hours before.

26. Plaintiff met with Hackbush at 10:30 am and received the IDP documents the same day at 2:10 pm. In addition, during her meeting with Hackbush, Plaintiff brought forth her

belief that she was being discriminated against based on her race and sex. Then, just hours later, Plaintiff was served with an IDP notice.

27. Plaintiff immediately contacted her WEA representative, Earl Spriggs, a White male, to request and obtain representation for this disciplinary meeting. Plaintiff advised Mr. Spriggs that she believed this disciplinary meeting was based on her race and was in retaliation for making a complaint. Mr. Spriggs took no action to address these complaints of discrimination.  Mr. Spriggs attended the disciplinary meeting with Plaintiff but took almost no action to represent her.

28. Following this meeting, Plaintiff advised Mr. Spriggs and the WEA that she wanted to file a complaint for discrimination based on her race, that she believed the discipline was retaliatory, and she wanted to appeal the discipline. Mr. Spriggs and the WEA were dismissive of her complaints and refused to take any action on her behalf. It is upon information and belief (as all relevant information is in the WEA and/or District's possession) that other similarly situated WEA members not in her protected classes were treated more favorably.

29. On March 12, 2025, Plaintiff received a written reprimand. Plaintiff contacted the WEA and requested that the discipline be appealed, but they took no action to address her request. It is upon information and belief (as all relevant information is in the WEA and/or District's possession) that other similarly situated WEA members not in her protected classes were represented and had their discipline appealed.

30. Immediately following the March 12, 2025, reprimand, Plaintiff was placed on administrative leave pending an investigation. When Plaintiff was placed on administrative leave, she was not given prior notice or an explanation. McElhany expressed confusion and

concern about this decision, telling Plaintiff that he did not know what the issue was and that she should "fight this" because he believed it was unjust. McElhany took no action to assist Plaintiff or to stop this behavior by District representatives.

31. Plaintiff requested that the WEA appeal her administrative leave, that they file a grievance, and that they assist her in addressing her complaints of discrimination. The WEA took no action to assist Plaintiff and ignored or dismissed her requests.

32. Plaintiff was then subjected to an additional investigation, and on April 16, 2025, she was issued a letter of admonition.

33. Plaintiff again requested that the WEA appeal her administrative leave, that they file a grievance, and that they assist her in addressing her complaints of discrimination. The WEA took no action to assist Plaintiff and ignored or dismissed her requests. It is upon information and belief (as all relevant information is in the WEA and/or District's possession) that other similarly situated WEA members not in her protected classes were represented and had their discipline appealed.

34. On April 23, Plaintiff was issued discipline and told she would be transferred to Shaw effective April 28, 2025. This transfer and reprimand occurred without any meaningful resolution of Plaintiff's original complaint.

35. Yet again, Plaintiff requested that the WEA appeal her administrative leave, that they file a grievance, and that they assist her in addressing her complaints of discrimination. The WEA took no action to assist Plaintiff and ignored or dismissed her requests. It is upon information and belief (as all relevant information is in the WEA and/or District's possession) that other similarly situated WEA members not in her protected classes were represented and had their discipline appealed.

-8-

36. Article 32 of the collective bargaining agreement ("CBA") that covers Plaintiff's employment mandates that "No teacher will be discharged, disciplined, or suspended without just cause."

37. Further, the CBA mandates that an involuntary transfer "shall not be arbitrary, capricious, or punitive in nature."

38. The District would later admit that it transferred Plaintiff as a form of punishment, clearly violating the CBA and also altering the terms and conditions of Plaintiff's employment. This transfer also altered Plaintiff's employment contract as it reduced her salary and benefits. It is upon information and belief (as all relevant information is in the District's possession) that similarly situated individuals not in Plaintiff's protected classes did not receive the same treatment.

39. All discipline actions took place in the two months following Plaintiff's complaints of discrimination and her requests for an accommodation.

40. Plaintiff suffered a loss in pay and status from being involuntarily transferred and her employment contract was altered.

41. As a Dean at Hug, Plaintiff was a member of the Hug Scholarship Committee. As a part of this assignment, she worked numerous hours outside of her contractual time for which she was compensated. This same opportunity is not available at Shaw, nor would it have been available at the two other schools proposed by the District, directly altering her work contract.

42. While at Hug, a Title 1 school, Plaintiff would earn additional hours per pay period that was compensated as part of the extra duties she was performing related to this Title 1 ranking. In being transferred to Shaw, she no longer has this opportunity, and she will not be able to earn this additional income, again altering her employment contract and reducing her

salary and benefits. This would have been the same if she had been assigned to one of the two other schools that were proposed by the District.

43. Plaintiff's duties as a Dean at Hug regularly required that she work "Saturday School" and included working on the weekends. Plaintiff was compensated for this time, and this opportunity has been removed from her by the District's involuntary transfer, further altering her employment contract and reducing her salary and benefits.

44. Moreover, being a Dean at large, comprehensive high school carries with it experience and status that strengthens Plaintiff's résumé, which is not equaled in the assignment to Shaw. Her continued work at Hug would have most likely led to the opportunity to be promoted to a higher position, which will be seriously hampered by her current assignment.

45. Plaintiff's removal from Hug seriously inhibits her promotional opportunities, and this is strengthened even more by the fact that the District did this involuntary transfer as a form of discipline, despite the plain and unambiguous CBA language.

46. It is upon information and belief (as all relevant information is in the District's possession) that no or little action was taken against similarly situated White males who have been alleged to have committed more egregious acts than what Plaintiff is alleged to have done.

47. For example, a White male teacher was alleged to have made sexually explicit statements to female students. It is upon information and belief (as all relevant information is in the District's possession) that this teacher was not placed on administrative leave or transferred, and when Hug administrator McElhaney was advised of the behavior, he took no

or minimal action to correct it. Moreover, it is believed that this teacher did not suffer any reductions or alterations to his employment contract.

48. Another White male teacher was twice found to be watching pornographic materials during his class periods, and it is upon information and belief (as all relevant information is in the District's possession) that he was not placed on administrative leave or transferred and that he did not suffer any reductions or alterations to his employment contract.

49. A White male CLS Aid, was seen on camera exiting the female locker room with his arm around a female student and then kissing the female on the forehead. It is upon information and belief (as all relevant information is in the District's possession) that this staff member was not transferred or placed on administrative leave and that he did not suffer any reductions or alterations to his employment contract.

50. In yet another example, the male wrestling coach permitted students to haze others, and he was not transferred and his employment contract was not altered.

51. Finally, a male staff at Hug, verbally assaults students while they are going to and from classes, a fact of which Plaintiff has complained, and McElhany is very aware. On one occasion, Plaintiff was required to intervene between this male staff and a student, as they were involved in a verbal confrontation. The male staff told the student "N-word, I'll fuck your little bitch ass up. I don't give a fuck about this job or the cameras." Plaintiff reported this situation, which was recorded by the school cameras to an assistant principal who informed McElhany. On other instances, this male staff has been heard to say things to students such as "Get your fat fucking bitch ass to class," and "Your mom should have swallowed you because you're a mistake," also "Eww that girl is so fucking ugly," and "You can't be ugly and dumb, honey so get your ugly ass to class." Hackbush was informed about

this staff member's behavior and rather than take action or investigate these reports, he responded that "Every school has a colorful campus monitor."

52. Despite this behavior being brought to Hackbush's and McElhany's attention, it is upon information and belief (as all relevant information is in the District's possession) that this male staff member has not been placed on administrative leave or disciplined and he did not suffer any reductions or alterations to his employment contract..  Rather, it is believed that this male staff member was promoted to coaching positions for the football and basketball teams.

53. Plaintiff has been subjected to numerous occasions where her White colleagues have used the "n-word" in her presence. When she has confronted these individuals, they attempt to justify their behavior by claiming they are just repeating what students have said or written. Yet, Plaintiff has made them aware she finds the use of this word offensive, and despite her complaints to her supervision no actions have been taken to discipline these individuals.

54. Since 2019, Plaintiff has made the District aware that she has disabilities. Plaintiff's disabilities affect her major life activities such as sleeping and concentrating, and she has regularly communicated these disabilities and symptoms to her supervision over the last six years.

55. When Plaintiff is faced with conflict, her symptoms are exacerbated. On many occasions during her time working for McElhany, Plaintiff has discussed with him her disability, both in-person and over text messages, and McElhany has confided in Plaintiff that he too suffers from similar symptoms.

56. Plaintiff is able to perform the essential functions of her job, with or without an accommodation, however, she requested an accommodation related to her working conditions under Melisa Chavez as Ms. Chavez's actions regularly exacerbated Plaintiff's disabilities.

57. Plaintiff reasserted to her supervisors to include most recently in February 2025 her Area Superintendent that she has a disability and this disability affects her major life functions.

58. The District has never requested Plaintiff complete any paperwork for any disability, to include when she was pregnant and accommodated by her then Principal.

59. When Ms. Chavez returned to Hug as an Assistant Principal in the 2024 school year, Plaintiff's disabilities were exacerbated as she had previously had issues with Ms. Chavez.

60. Plaintiff immediately approached McElhany and requested that she not be supervised by Ms. Chavez as she feared she would be treated differently and that this would cause her disability symptoms to worsen. McElhany promised he would deal with any concerns Plaintiff had but then took no initiative to enter into the interactive process with her.

61. At no point did anyone in the District engage Plaintiff in the interactive process, or request she complete any paperwork related to her disabilities. Instead, Plaintiff's request went largely ignored causing her symptoms to become more and more severe.

62. Before the start of the 2024-2025 school year, McElhaney requested a meeting to discuss concerns related to Ms. Chavez's return to Hug. In that meeting, McElhaney expressed his own disappointment at the District's decision to place Ms. Chavez at Hug again and assured Plaintiff that he would intervene if Ms. Chavez mistreated her. Yet he took no action

to address Plaintiff's request for an accommodation or to protect Plaintiff from Ms. Chavez's actions against her.

63. Despite these promises, Ms. Chavez continued to mistreat Plaintiff, and notwithstanding Plaintiff's requests for help, no action was taken to address the issues or to accommodate Plaintiff. This hostile environment significantly impacted Plaintiff's mental health, leaving her feeling unsupported and underappreciated at work.

64. On February 14, 2025, due to receiving no relief from McElhany, Plaintiff emailed the Human Resources Director and Assistant Director, multiple members of the District's Labor Relations team and McElhany requesting information on how to address Ms. Chavez. This request went unanswered, and the District once again failed to enter into the interactive process with Plaintiff as required.

65. The specific accommodation request that Plaintiff was seeking was to have Ms. Chavez removed as her supervisor. As stated in the February 14, 2025, email, McElhany was unable to address the issues, and the District did not intervene or take any action to determine if a reasonable accommodation was possible.

66. The District, instead of addressing the request, disciplined Plaintiff for her interactions with the very person she was seeking to be separated from.

67. At no point did anyone at the District claim Plaintiff's request for job restructuring was an unreasonable accommodation or would have been an undue hardship.

68. No one at the District ever entered into the interactive process with Plaintiff.

69. The District previously accommodated Plaintiff when she was pregnant by altering her job requirements so that she would not have to engage in physical altercations with students. This accommodation was done verbally, through Plaintiff's then Principal and

-14-

Assistant Principal, and no one required her to complete any paperwork prior to or during this accommodation. Instead, Plaintiff was accommodated by having a discussion with her supervisors.

70. As would any reasonable person, Plaintiff believed that this was the process that would be followed in her subsequent accommodation requests.

71. The steps taken by Plaintiff to request protection against discrimination, and to request a reasonable accommodation related to her well-known disabilities are protected activities.

## FIRST CAUSE OF ACTION
### (Discrimination Based On Race And Sex)

72. Plaintiff re-alleges and incorporates all allegations made in Paragraphs 1 through 71, above, as if stated herein verbatim.

73. Plaintiff is a Black female and she was qualified to perform her job.

74. Plaintiff was subjected to multiple adverse employment actions based at least partly on her sex and race.

75. These adverse employment actions include, but are not limited to a reduction in pay, responsibilities and a transfer.

76. The WEA treated Plaintiff differently based on her race and sex as demonstrated by the actions of its representatives.

77. As noted herein, other similarly situated males not in Plaintiff's protected classes were not subjected to the same adverse employment actions and were provided with representation and remedies that were denied to Plaintiff.

78. The District and the WEA's proffered reasons for such treatment are pretextual and are not supported by facts and evidence.

79. The District and the WEA's acts were intentional, malicious, outrageous and were meant to, and did, discriminate against Plaintiff and deprived her of her rights.

## SECOND CAUSE OF ACTION
### (Failure To Accommodate)

80. Plaintiff re-alleges and incorporates all allegations made in Paragraphs 1 through 81, above, as if stated herein verbatim.

82. A "qualified individual" with a disability under Title I of the ADAA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."

83. Plaintiff is a qualified individual with a disability under 42 U.S.C. § 12101, et seq.

84. Plaintiff's disability substantially limits one or more of her major life activities.

85. Plaintiff was able to perform the essential functions of her job, with or without a reasonable accommodation, and she performed her job functions satisfactorily.

86. Since mid-2024, Plaintiff made multiple repeated requests for ADAA accommodations for her disability.

87. The District was aware of and informed of these requests for accommodation.

88. Despite knowing of these requests, the District failed to enter into the interactive process or to reasonably accommodate Plaintiff's disability.

89. Despite knowing that Plaintiff's requests were reasonable and would not cause an undue burden on the District, it failed to accommodate her.

90. Plaintiff's request to be reassigned to a different supervisor is a reasonable accommodation.

91. The District's acts were intentional, malicious, outrageous and were meant to, and did, discriminate against Plaintiff and deprived her of her rights.

-16-

**THIRD CAUSE OF ACTION**
**(Retaliation)**

92.  Plaintiff re-alleges and incorporates all allegations made in Paragraphs 1 through 91, above, as if stated herein verbatim.

93.  The District retaliated against Plaintiff for questioning disparate employment practices.

94.  The District retaliated against Plaintiff for making complaints of discrimination and for making an accommodation.

95.  The District retaliated against Plaintiff for requesting reasonable accommodation for her disabilities.

96.  The District's acts were intentional, malicious, outrageous and were meant to retaliate against Plaintiff for questioning disparate employment practices and making complaints of harassment.

97.  The District's acts caused Plaintiff to suffer embarrassment, stress, mental anguish, emotional pain and suffering and loss of enjoyment of work activities.

**FOURTH CAUSE OF ACTION**
**(43 U.S.C. §1983 VIOLATIONS)**

98.  Plaintiff re-alleges and incorporates all allegations made in Paragraphs 1 through 97, above, as if stated herein verbatim.

99.  Defendants Hackbush and McElhany were or are public employees whose powers to take the actions described herein are conferred upon them by Nevada Revised Statutes.

100.  Defendants Hackbush and McElhany were or are public employees whose acts were taken while purporting to act in the performance of their official duties.

101. Defendant District is a public entity whose powers to take the actions described herein are conferred upon it by Nevada Revised Statutes.

102. Defendant District is a public entity whose acts were taken while purporting to act under the color of authority.

103. Defendants District, Hackbush and McElhany's actions were based, at least in part, on expressly adopted official District policies.

104. Defendants District, Hackbush and McElhany's acts were intentional, malicious, outrageous and were meant to deprive Plaintiff of her federally defined right to freely contract.

105. Plaintiff's right to the protection under federal statutes were clearly known and identified and qualified immunity does not apply to any Defendants.

**WHEREFORE**, Plaintiff CRYSTAL JACKSON prays for judgment against Defendants as follows:

1. For an award of compensatory damages to be proven at trial;

2. For an award of punitive damages, where permitted, to be proven at trial;

2. For an award of attorney's fees, witness fees, and other costs (42 USCS § 12205);

3. For interest on all damages awarded; and

4. For any additional or further relief as may be just and proper.

Dated this 9th day of March, 2026.

/s/ *Ronald J. Dreher*
Ronald J. Dreher
NV Bar No. 15726
DREHER LAW
P.O. Box 6494
Reno, NV 89513
Telephone: (775) 846-9804
ron@dreherlaw.net
*Attorney for Plaintiff*

-18-

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that on this date I served the foregoing document as follows:

_____          Deposited for mailing, first class postage prepaid;

_____          Deposited for mailing, certified/registered;

_____          Personal delivery to office;

\_\_\_X\_\_\_          CM/ECF electronic service

\_\_\_\_\_          E-mail

addressed as follows:

Kevin Pick, Esq.
Travis Lucia, Esq.
Sara Montalvo, Esq.
P.O. Box 30425
Reno, NV 89520-3425
*Attorneys for Defendant*
*Washoe County School District*

DATED this 9th day of March, 2026.

/s/ *Ronald J. Dreher*_____
Ronald J. Dreher
NV Bar No. 15726
DREHER LAW
P.O. Box 6494
Reno, NV 89513
Telephone: (775) 846-9804
ron@dreherlaw.net
*Attorney for Plaintiff*

-19-