Ronald J. Dreher
NV Bar No. 15726
DREHER LAW
P.O. Box 6494
Reno, NV 89513
Telephone: (775) 846-9804
ron@dreherlaw.net
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| CRYSTAL JACKSON, | Case No.: 3:25-cv-00748-ART-CLB |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'** |
| WASHOE COUNTY SCHOOL DISTRICT, and WASHOE EDUCATION ASSOCIATION, and TRISTAN MCELHANY, an individual, and KRISTOPHER HACKBUSH, an individual, and DOES I-X, | **WASHOE COUNTY SCHOOL DISTRICT, TRISTAN MCELHANY, AND KRISTOPHER HACKBUSH'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Defendants. | |

_____/

**COMES NOW** Plaintiff CRYSTAL JACKSON, by and through her undersigned counsel, hereby files her Response in Opposition to the Motion to Dismiss First Amended Complaint ("FAC") (ECF No. 23) filed by Defendants Washoe County School District, Tristan Mcelhany, and Kristopher Hackbush (collectively "Defendants") on April 3, 2026. This Response is based on the following memorandum of points and authorities, the pleadings and papers on file herein and any other material the Court chooses to consider.

/ / /

/ / /

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Plaintiff Crystal Jackson is a Black female, who was hired by Respondent Washoe County School District ("District") as a CLS Aide in 2014. After completing her teaching certifications, Ms. Jackson was hired as a teacher in 2016 and was eventually promoted to the position of Dean, still a teacher level position, at Hug High School ("Hug") in the 2021-2022 school year. Ms. Jackson was given the permanent position due to her excellent performance, and the Principal and Assistant Principal communicated to her that she had earned the permanent position through her hard work and dedication. **(Exhibit 1).** Ms. Jackson has received highly effective ratings for the last four years, which is the highest rating available to a school district employee, as well as numerous awards for her performance. (**Id**.) It is only recently that Ms. Jackson has been subjected to disciplinary measures, which occurred after she sought assistance from her administration related to her complaints of discrimination and harassment. **(Motion Exhibits 2-3).** Other, similarly situated employees not in Ms. Jackson's protected classes (Black and female), have been treated more favorably than she has, despite egregious allegations of misconduct. Unlike Ms. Jackson, these employees have continued to work, and some have even been promoted. Furthermore, Ms. Jackson has advised her supervisors to include most recently in February 2025 that she has a disability and this disability affects her major life functions. Defendants have never requested Ms. Jackson complete any paperwork for any disability, to include when she was pregnant and accommodated by her then Principal. Due to the actions taken by Defendants, described in the FAC and herein, it is clear that Ms. Jackson has been discriminated against in the terms and conditions of her employment due to her race and sex, they have failed to accommodate her disability, and she has been retaliated against for bringing

her complaints of discrimination, requesting a reasonable accommodation, and questioning discriminatory employment practices. Furthermore, the employment contract Ms. Jackson had with the District has been violated and she has been denied the enjoyment of the benefits and terms and conditions of this employment contract by the moving Defendants.

## II. STANDARD OF REVIEW

### A.    Rule 12(b)(6) – Failure to state a claim.

FRCP 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief," and this "short and plain" statement is only to give "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). This short and plain statement is not required to contain "[d]etailed factual allegations" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 548 (2007)). Rather, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 548.

The Federal Rules of Civil Procedure describe "a liberal system of 'notice pleading.'" Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). When analyzing a complaint being challenged under a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party and must accept all factual allegations as true. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-338 (9th Cir. 1996). The U.S. Supreme Court has held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

3

Ms. Jackson's FAC includes short and plain statements of her claims clearly showing she is entitled to relief. Conley, 355 U.S. at 47; FRCP 8(a)(2); (FAC at ¶¶ 9-105). These statements, along with the EEOC charge of discrimination, and the EEOC position statement provide sufficient notice to Defendant District of Ms. Jackson's claims against it, as well sufficient notice to Defendants Hackbush and Mcelhaney as to the claim against them. **(Exhibit 3).** Ms. Jackson is not mandated to provide more detailed factual allegations in order to meet the pleading requirements as the Defendants are seeking to assert in their motion, as these factual allegations are already contained in the FAC, and the motion to dismiss must be denied as Ms. Jackson has met the pleading standards.  Iqbal, 556 U.S. at 678; Conley, 355 U.S. at 47; FRCP 8(a)(2); (FAC at ¶¶ 9-105).

**III. ARGUMENT**

Ms. Jackson has sufficiently pleaded her claims and identified which Defendant against whom each of these claims are asserted. (FAC at ¶¶ 9-105). In addition, Ms. Jackson vehemently denies ever being untruthful in her pleadings before this honorable Court or the EEOC. The Defendants' assertions that Ms. Jackson or her undersigned counsel fabricated evidence or misstated facts is completely without merit, inflammatory and meant only to damage Ms. Jackson and her counsel's standing with the Court. The statements made in the EEOC charge regarding Ms. Jackson filing a complaint of discrimination are accurate and were reiterated in the FAC at ¶ 28. The fact that the Defendants failed to act on or acknowledge the complaint, does not mean that it was not filed, and these unwarranted and baseless statements related to Ms. Jackson and her counsel's integrity and honesty should be reprimanded. As described herein, Ms. Jackson's claims are brought in good faith and were sufficiently pleaded against all Defendants, and the motion should be **DENIED**. Iqbal, 556 U.S. at 678.

4

**A. Exhaustion of Administrative Remedies**

Ms. Jackson's has exhausted her administrative remedies. "Exhaustion of administrative remedies is a prerequisite to adjudication of claims for discrimination under Title VII and involves two components: (1) filing a timely charge and (2) acting upon a notice of right to sue." Thomas v. Dejoy, 2025 U.S. Dist. LEXIS 186272 at *2 (D. Nev. June 6, 2025) (citing Lyons v. England, 307 F.3d 1092, 1103-04 (9th Cir. 2002); Scott v. Gino Morena Enters., LLC, 888 F.3d 1101, 1106 (9th Cir. 2018); 42 U.S.C. § 2000e-5(e)(1)).

Ms. Jackson filed her charge of discrimination on May 6, 2025, with the EEOC and submitted a position statement to the EEOC on September 4, 2025. **(Exhibit 2).** Ms. Jackson was then issued a notice of right to sue form the EEOC on September 25, 2025, and she filed her Complaint on December 19, 2025, which was less than 90 days from the date of the issuance of the right to sue notice. Thus, there is no question that here claims here are timely. Thomas, 2025 U.S. Dist. LEXIS 186272 at *2.

The motion challenges the content of Ms. Jackson's charge of discrimination filed with the EEOC. Yet, this challenge fails as Title VII's procedural requirements are "neither interpreted too technically nor applied too mechanically." Richerson v. Jones, 572 F.2d 89, 95-96 (3d Cir. 1978). Accord, Clark v. Chasen, 619 F.2d 1330, 1332 (9th Cir. 1980); Ramirez v. National Distillers & Chemical Corp., 586 F.2d 1315, 1321 (9th Cir. 1978). The absence of a perfect "fit" between the administrative charge and the judicial complaint is "therefore not fatal to judicial review if the policies of promoting conciliation and avoiding bypass of the administrative process have been served." Ong v. Cleland, 642 F.2d 316, 318-319 (1981) (quoting Richerson, 572 F.2d at 96).

Ms. Jackson's charge of discrimination contained sufficient information to notify Defendants that she was alleging discrimination based on race, sex, color, disability and retaliation. **(Motion Exhibit 3).** The Defendants seem to take issue with the wording in the charge related to her claims raised in the FAC. Yet the charge of discrimination and position statement provided to the EEOC and Defendants meticulously detail Ms. Jackson's claims that were then brought to the Court in the FAC. **(Motion Exhibit 3; Exhibit 2).** To now come to this Court and argue that the charge is insufficient to put the Defendants on notice of Ms. Jackson's claims is disingenuous and fails to acknowledge the full and complete knowledge Defendants have of Ms. Jackson's claims. Therefore, Ms. Jackson's allegations, as found in the charge of discrimination and reiterated and reinforced in her EEOC position statement, have met the any standard that may be required and she has again demonstrated she has exhausted her administrative remedies. Ong, 642 F.2d at 318-319:  Richerson, 572 F.2d at 96.

Finally, the motion tries to raise a timeliness issue and asserts that some of Ms. Jackson's are barred as they fall outside of the allotted time period for filing a charge of discrimination. As Ms. Jackson stated in her charge of discrimination, she is alleging a hostile work environment against the moving Defendants. **(Motion Exhibit 3).**  "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S 101, 114, (2002), superseded on other grounds by the Lily Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, 123 Stat. 5. See, e.g., Gipaya v. Wilson, 345 F. Supp. 3d 1286, 1297 n.3 (D. Hawai'i 2018), aff'd sub nom. Gipaya v. Barrett, 803 F. App'x 111 (9th Cir. 2020).  The Nat'l R.R. Court, when determining if an actionable hostile work environment claim exists, defined that it looks to all circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and

whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S. Ct. 367 (1993)). The Court held that a "hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Id. (citing 42 U.S.C. § 2000e-5(e)(1)). It matters only "that an act contributing to the claim occurs within the filing period," and when this is the case, such as in this matter, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id.  Furthermore, the act that resulted in the filing, need not be the last act, "as long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has 'occurred,' even if it is still occurring." Id. Therefore, the continuing violation doctrine distinguishes between discrete acts of discrimination and hostile work environment claims. As such, a discrete act consists of an unlawful practice that "occurred" on the day it "happened," and includes, for example, "termination, failure to promote, denial of transfer, or refusal to hire." Id. In comparison, hostile work environment claims "are based on the cumulative effect of individual acts, 'occur[ing] over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.'" Id. at 103 (citing Harris, 510 U.S. at 21). Thus, "provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. . . . the employee need only file a charge within [the relevant time period] of any act that is part of the hostile work environment." Id. at 117-18. Subsequent events, therefore, may still be part of the one hostile work environment claim, and a charge may be filed at a later date and still encompass the whole. Id.

First, the moving Defendants concede that all claims that occurred after December 12, 2024 (which they repeatedly mislabel as December 12, 2025) are timely. They are only taking with those allegations taking place before these dates. Yet the allegations raised in the FAC that occurred from December 12, 2024, forward are sufficient to support Ms. Jackson's claims against these Defendants as they include short and plain statements outlining discrimination based on sex and race, retaliation, a failure to accommodate a disability, a hostile work environment and violation of Ms. Jackson's employment contract terms and conditions. (FAC at ¶¶ 20-71). Ms. Jackson additionally included those items that occurred more than 180 days before she filed her charge of discrimination as these support her allegations that she was subjected to a hostile work environment, and such types of actions may be considered because at least one alleged act of discrimination occurred within the 180-day period. See e.g. Nat'l R.R. Passenger Corp., 536 U.S at 114. Therefore, Ms. Jackson's claims are timely.

As demonstrated above, Ms. Jackson has exhausted her administrative remedies and alleged claims that either fall within the prescribed time periods, or are timely based on a continued patter of behavior contributing to a hostile work environment. Thus, the motion to dismiss the charge of discrimination should be denied. Id.; Thomas, 2025 U.S. Dist. LEXIS 186272 at *2; Ong, 642 F.2d at 318-319: Richerson, 572 F.2d at 96.

**B. Discrimination Based On Race And Sex**

"Title VII of the Civil Rights Act of 1964 makes it 'an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" 42 U. S. C. § 2000e-2(a)(1). Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63 (1986). "As enacted, Title VII prohibits all forms of discrimination

because of sex, however they may manifest themselves or whatever other labels might attach to them." Id. The words "discriminate against," the Court has explained, refer to "differences in treatment that injure" employees. Muldrow v. City of St. Louis, 601 U.S. 346, 347 (2024) (citing Bostock, 590 U. S. at 681). Moreover, Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Muldrow, 601 U.S. at 354 (citing 42 U. S. C. §2000e-2(a)(1)). The applicable statute "targets practices that 'treat[ ] a person worse' because of sex or other protected trait." Id., at 658. To establish a prima facie Title VII discrimination case, a plaintiff must show that: "(1) [she] belonged to a protected class; (2) [she] was] qualified for her job; (3) [she was] subjected to an adverse employment action; and (4) similarly situated employees not in [her] protected class received more favorable treatment." Snider v. Greater Nev. LLC, 2009 U.S. Dist. LEXIS 95749, at *15 (D. Nev. Oct. 14, 2009) (quoting Moran v. Selig, 447 F.3d 748, 753 (9th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Ms. Jackson clearly is brining these claims only against the WEA and the District as outlined in the FAC. In fact, the FAC details that:

78. The District and the WEA's proffered reasons for such treatment are pretextual and are not supported by facts and evidence.

79. The District and the WEA's acts were intentional, malicious, outrageous and were meant to, and did, discriminate against Plaintiff and deprived her of her rights.

Thus, Ms. Jackson has not waived any claim against the District, and is still pursuing her race and sex discrimination claims as the FAC clearly delineates. (FAC at ¶¶ 78-79).

Ms. Jackson is a Black female and this puts her into protected classes, thereby satisfying prong one of her race and sex discrimination claims. The moving Defendants attempt to mislead the Court by replacing the requirement that Ms. Jackson be "qualified for position" with "performing satisfactorily." However, not only was Ms. Jackson qualified for her position, she was performing satisfactorily. **(Exhibit 1).** Moreover, "performing satisfactorily" is only required to be shown under an age discrimination claim, not a race or sex discrimination claim and is not applicable here. See e.g. Chuang v. Univ. of Cal. Davis, 225 F.3d 1115, 1123 (9th Cir. 2000). As is illustrated in Ms. Jackson's performance evaluations, and the fact that she had performed so well she was exempt from an evaluation, she was unquestionably qualified for her position. **(Exhibit 1).**

An adverse employment action occurs when an "employer's action 'materially affect[s] the compensation, terms, conditions, or privileges of . . . employment.'" Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting Chuang, 225 F.3d at 1126).  As the United States Supreme Court has made clear, the "terms [or] conditions" phrase is not used "in the narrow contractual sense"; it covers more than the "economic or tangible." Oncale v. Sundowner Offshore Services, Inc., 523 U. S. 75, 78 (1998).; see also Meritor Savings Bank, FSB v. Vinson, 477 U. S. 57, 64 (1986).

Ms. Jackon sufficiently alleges and claims she suffered adverse employment actions based at least in part on her race and sex. Ms. Jackson was disciplined on multiple occasions, transferred as a form of punishment, her contractual rights were violated, she was denied an accommodation and her pay and status were reduced. (FAC at ¶¶ 34, 37-45). "Although an employee must show some harm from a forced transfer to prevail in a Title VII suit, she need not show that the injury satisfies a significance test." Muldrow, 601 U.S. at 350. Ms. Jackson's

10

illegal transfer affected not only her ability to earn additional income, but also other rights related to Ms. Jackson's status, her assignment, and her ability to promote at a future time. Therefore, the FAC sufficiently pleaded that Ms. Jackson suffered adverse employment actions based on her race and sex, and this prong has been met. Id.; Snider, 2009 U.S. Dist. LEXIS 95749, at *15.

Finally, the moving Defendants argue that the employees cited by Ms. Jackson in her complaint are not similarly situated to her and her claims fail due to this. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." Nicholson v. Hyannis Air Serv., 580 F.3d 1116, 1125 (9th Cir. 2009) (citing Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003)). "The employees need not be identical; they must simply be similar 'in all material respects.'" Id. (quoting Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006)).  The collective bargaining agreement ("CBA") that covered Ms. Jackson and that was in effect at the time of the allegations contained in the FAC makes no distinction between teachers and deans, and Ms. Jackson was not considered anything more than a teacher with a special assignment in her dean position. **(Exhibit 3).**  Moreover, if Ms. Jackson had been an administrator at the time of the allegations in the FAC, she would have been an exempt employee, not entitled to special pay or additional compensation, but this was again not the case as the CBA delineates. **(Exhibit 3).** This is further solidified by the fact that Ms. Jackson was evaluated, and excused from an evaluation, based on NRS 391.690 which describes **teacher evaluations. (Exhibit 4).** The FAC describes White male teachers who were treated more favorably than Ms. Jackson. (FAC at ¶¶ 46-52). These teachers and staff were similarly situated to Ms. Jackson as they are covered by the same CBA and they are all considered teachers, both under statute and under the CBA. **(Exhibits 3-4).** As such, Ms. Jackson has satisfied prong four

of her race and sex discrimination claims as she has demonstrated that others not in her protected classes (Black, female), were treated more favorably that she was. (FAC at ¶¶ 46-52).

Thus, the FAC established that Plaintiff is in protected classes, that she performed her duties satisfactorily and she is qualified for her job, while also establishing that she suffered adverse employment actions while others outside of her classes were treated more favorably, Ms. Jackson has met her burden of establishing a *prima facie* case of discrimination based on her race and sex and these claims should not be dismissed. see McDonnell Douglas, 411 U.S. at 802; Moran, 447 F.3d at 753; Snider, 2009 U.S. Dist. LEXIS 95749, at *15.

**C. Failure to Accommodate.**

Plaintiff sufficiently pleaded in her FAC that the District failed to engage in the interactive process as required by the ADAA. (FAC at ¶¶ 64, 65-71). The moving Defendants allege that Ms. Jackson failed to identify her disability or how it affects her major life functions. However, in the FAC, she clearly states that she advised the District, through both Defendants Hackbush and Mcelhaney of her disability and of how it affects her major life functions. (FAC at ¶¶ 54-55, 57, 60-61). Therefore, the moving Defendants were on notice that Ms. Jackson is disabled and that she had requested a reasonable accommodation. (FAC at ¶¶ 54-55, 57, 60-61). Once an employee requests an accommodation, "the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) The employer has an "affirmative obligation to engage in an interactive process in order to identify, if possible, a reasonable accommodation that would permit . . . [the employee] to retain his employment." Dark v. Curry Cnty., 451 F.3d 1078, 1088 (9th Cir. 2006). This interactive-process obligation is not exhausted by one effort: it is a continuing duty. Id.

Ms. Jackson can establish a failure-to-accommodate claim under the ADA by establishing that 1) [she] is a qualified individual with a disability, 2) [she] requested accommodation, 3) the employer knew of the requested accommodation, and 4) the employer failed to reasonably accommodate the disability. Sanders v. Arneson, 91 F.3d 1351, 1353 (9th Cir. 1996) (setting forth elements for an ADA discrimination claim); Beck v. Univ. of Wisc. Bd. of Regents, 75 F.3d 1130, 1134 (7th Cir. 1996) (discussing a failure-to-accommodate claim); see also 42 U.S.C. § 12111 (defining terms). A "qualified individual" with a disability, under Title I of the ADA, is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). 29 C.F.R. 1630.2(g)(1)(i) defines a disability as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual."

Ms. Jackson is a qualified individual with a disability as she suffers from severe anxiety and depression which affects her major life functions such as sleeping and concentrating. Despite her disabilities, Ms. Jackson could and did perform the essential functions of her job. Thus, she is a qualified individual with a disability. 42 U.S.C. § 12111(8).

The moving Defendants were made aware of Ms. Jackson's disabilities, and her requested accommodation involved a request to have a different supervisor. A reasonable accommodation can be many different things and could include,

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities. (Emphasis added).

13

Bd. of Trs. v. Garrett, 531 U.S. 356, 361 (2001) (citing 42 U. S. C. §§ 12111(9); 12112(b)(3)(A))).  The ADA requires employers to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business."  Young v. UPS, 575 U.S. 206, 218-219 (2015) (citing 42 U. S. C. §§ 12112(b)(5)(A)).  Instead of entering into the interactive process, Ms. Jackson's accommodation requests were simply ignored, and she was left without any accommodation. (FAC at ¶¶ 64-71).  The District cannot claim that Ms. Jackson's request for job restructuring was an unreasonable accommodation or would have been an undue hardship as it never entered into the interactive process with her. As noted herein, job restructuring is considered a reasonable accommodation, and as is evidenced from the actions the District eventually took, it could have easily reassigned Ms. Chavez to a different school. Garrett, 531 U.S. at 361.

Thus, the FAC is sufficiently pled to establish that the District failed to reasonably accommodate Ms. Jackson's disability or to enter into the interactive process as required and the motion to dismiss this claim should be denied. Sanders, 91 F.3d at 1353; Zivkovic, 302 F.3d at 1089; Garrett, 531 U.S. at 361; 42 U. S. C. §§ 12111(9); 12112(b)(3)(A).

**D. 42 U.S.C. §1983 VIOLATIONS**

A plaintiff, to bring a Section 1983 claim, must prove that "(1) a person acting under color of state law (2) committed an act that deprived him of some right, privilege, or immunity protected by the Constitution or federal law." Chi v. Clark Cnty. Sch. Dist., 2025 U.S. Dist. LEXIS 151091 at *39-40 (citing Fed'n of Afr. Am. Contrs. v. City of Oakland, 96 F.3d 1204, 1216 (9th Cir. 1996), overruled on other grounds by Yoshikawa v. Seguirant, 74 F.4th 1042,

1047 (9th Cir. 2023); Vandermeer v. Douglas Cnty., 15 F. Supp. 2d 970, 984-85 (D. Nev. 1998)). The initial inquiry of a § 1983 action is "whether the plaintiff has been deprived of a right secured by the Constitution or federal laws." Chapen v. Munoz, 2007 U.S. Dist. LEXIS 115646, 2007 WL 9728687, at *2 (D. Nev. Aug. 6, 2007) (citing Baker v. McCollan, 443 U.S. 137, 142-47(1979) and Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1996)).

42 U.S.C. § 1981(a) guarantees, among other things, "[a]ll persons . . . the same right  . . . to make and enforce contracts . . . as is enjoyed by white citizens." To prevail on a Section 1981 claim, a plaintiff must initially plead and ultimately prove that, but for race, plaintiff would not have suffered the loss of a legally protected right. See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327 (2020). In addition, 42 U.S.C. § 1981 (b) defines that the term "make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." The Civil Rights Act of 1991 provides that the clause "to make and enforce contracts" in Section 1981 "includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits,  privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" Domino's Pizza, Inc. v. McDonald, 30 546 U.S. 470, 479-80 (2006). Further, Ms. Jackson is required to bring a Section 1983 claim to enforce her Section 1981claims. As Section 1981 establishes substantive rights that a state actor may violate, but it does not itself contain a remedy against a state actor for such violations. Yoshikawa v. Seguirant, 74 F.4th 1042, 1047 (9th Cir. 2023).  Therefore, "[a] plaintiff seeking to enforce rights secured by § 1981 against a state actor must bring a cause of action under § 1983." Id. As such, Section

1983 provides the exclusive federal damages remedy for the violation of the rights guaranteed by Section 1981 when the claim is pressed against a state actor. See Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 702. (1989) ("The express 'action at law' provided by § 1983 for the 'deprivation of . . . rights secured by the Constitution and laws' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.").

Title 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured  by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." Connick v. Thompson, 563 U.S. 51, 60 (2011). If a governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation, then the municipality may be liable under this section. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). However, local governments are responsible only for "their *own* illegal acts" under § 1983. Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986) (citing Monell, 436 U.S., at 665-683). "On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See e.g. Monroe v. Pape, 365 U.S. 167 (1961) (overruled on other grounds by Monell, 436 U.S. 658, 692 (1978); Graham, 473 U.S. at 166.

As a teacher and dean, Ms. Jackson was statutorily required to have a contract of employment with the District. NRS 391.810(1)(a) requires a teacher/dean be provided with an employment contract by May 1 of each year. Ms. Jackson was under a valid, enforceable

employment contract for the 2024-2025 school year. In this matter, Ms. Jackson is alleging that her employment contract and her contractual rights under Section 1981 were violated by the Defendants when she was wrongfully transferred to a lower position, with less pay and status, and as a form of punishment. (FAC at ¶¶ 34, 38, 40, 42-43, 45).  Ms. Jackson is alleging that the District, by and through its representatives, and Defendants Hackbush and Mcelhaney violated her rights under Section 1981 to contract, under the color of authority as actors of the state. (FAC at ¶¶ 43-52, 99-105).  Ms. Jackson also pleaded that these contractual violation occurred at least in part due to her race and sex, as other similarly situated male employees, not in her protected classes were treated more favorably than she was. (FAC at ¶¶ 43-52).

Ms. Jackson alleges that Defendants discriminated against her based on her race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, 42 U.S.C. § 2000e-2(a)(1). (FAC at ¶ 8, 26-27).  These allegations include that Ms. Jackson was discriminated against in the terms and conditions of her employment based on her race and sex. (FAC at ¶¶ 19-20, 26-28).  In addition, Ms. Jackson pleaded that her rights under her employment contract were modified and she was not able to enjoy all the benefits, privileges, terms, and conditions of this contract due to the Defendants illegal actions. (FAC at ¶¶ 43-52, 99-105). Ms. Jackson's allegations include that she had an employment contract, which the Defendants cannot deny, and that this employment contract was altered by the Defendants' actions, and that these actions were done in violation of established statutory rights. (FAC at ¶¶ 79, 91, 104-05). The District is liable for its own acts, to include meting out discipline that was retaliatory in nature, failing to abide by the employment contract conditions, failing to accommodate Ms. Jackson's disability. (FAC at ¶¶ 34, 37-40, 64-68, 99-105).

Ms. Jackson also pleaded that the individual Defendants took actions that violated her established statutory rights. (FAC at ¶¶ 20-26, 47, 51-52, 99-100, 103-05). These actions include taking adverse actions against Ms. Jackson based on her race and sex that resulted in Ms. Jackson's benefits, terms and conditions of employment contract and relationship being altered. (FAC at ¶¶ 34, 37-45). Moreover, Defendants Hackbush and Mcelhaney failed to enter into the interactive process with Ms. Jackson, despite her making them aware of her disability and her request for a reasonable accommodation. (FAC at ¶¶ 23-24, 67-71). This failure caused Ms. Jackson's rights under the ADAA to be denied and violated, and is alleged to have been due to Ms. Jackson's sex and race.

Thus, Ms. Jackson has sufficiently pleaded a claim for relief under Section 1983 for her claimed Section 1981 violations, and this cause of action should not be dismissed. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 548.

**1. Qualified and Discretionary Act Immunity.**

NRS § 41.032 sets forth exceptions to Nevada's general waiver of sovereign immunity. Pursuant to § 41.032(2), no action may be brought against a state officer or employee or any state agency or political subdivision that is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused." Discretionary act immunity may protect decisions at all levels of government so long as the decisions "require analysis of government policy concerns." Id. at 729. In, Martinez, the Nevada Supreme Court adopted the two-part test for discretionary immunity outlined in Berkovitz v. United States and United

18

States v. Gaubert to determine whether a discretionary function bars a suit against the government. Martinez v. Maruszczak, 123 Nev. 433, 435, 168 P.3d 720, 722 (2007).

In the Berkovitz case, the United States Supreme Court clarified that "a court must first consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice." Berkovitz v. United States, 486 U.S. 531, 536-537 (1988) (citing Dalehite v. United States, 346 U.S. 15, 34 (1953) (stating that the exception protects "the discretion of the executive or the administrator to act according to one's judgment of the best course")). The Berkovitz court continued by explaining that the "discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Id.  Once it is determined that the conduct is prescribed by a federal statute, regulation, or policy the "conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." Id. (citing Westfall v. Erwin, 484 U.S. 292, 296-297 (1988)).

In its motion, the District claims qualified immunity based on discretionary act immunity. However, the FAC alleges the District violated the ADAA by failing to accommodate Ms. Jackson, Title VII by taking actions against her based on her race and sex, and altering the employment contract based on her race. (FAC at ¶¶ 34, 37-40, 64-68, 99-105). The decisions taken that altered the terms and conditions of Ms. Jackson's employment were done in violation of 42 U.S.C. § 1981(b) which mandates that all persons, regardless of race, shall be able to make and enjoy all benefits, privileges, terms, and conditions of the contractual relationship. Thus, the first prong of the test established by Berkovitz has not been met as this is not a matter of choice. Berkovitz, 486 U.S. at 536-537. In addition, Section 1981 is a clearly

established law, that has been recognized and enforced for decades, and the District is mandated to follow its requirements. Therefore, given that the statute mandates what actions the District must take, there is no element of discretion and discretionary act immunity cannot be applied or granted. Id.; Westfall, 484 U.S. at 296-297. Therefore, the District is not entitled to discretionary act or qualified immunity related to Ms. Jackson's claims.

### 2. Plaintiff's §1983 Claims May Be Brought Against the Individual Defendants.

A suit brought against a government employee in their personal capacity, or a "Personal-capacity suit," seeks to "impose individual liability upon a government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21, 25 (1991). "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Id. (quoting Ky. v. Graham, 473 U.S. 159, 166 (1985)). Moreover, qualified immunity "protects state officials from civil liability for damages resulting from discretionary acts, *so long as those acts do not violate clearly established statutory or constitutional rights*." Butler v. Bayer, 123 Nev. 450, 458, 168 P.3d 1055, 1061 (2007) (citing Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982)) (emphasis added).

As described herein, Section 1981 mandates that all persons are permitted to contract, and to enforce and enjoy these contracts no matter what race they may be. 42 U.S.C. § 1981(a-b). Defendants Hackbush and Mcelhaney are alleged to have violated the contractual benefits afforded to Ms. Jackson through her employment contract based on her race. (FAC at ¶¶ 34, 37-45, 99-105). Section 1981 is well established law of which these Defendants are undoubtedly aware, and there is no discretion to act in the manner they acted. Section 1981 does not permit for a state actor or state employee to make the choice to ignore an employment and to fail to permit Ms. Jackson to enjoy this contract through the choice of the state actor or employees. As

such, the first prong of the test established by <u>Berkovitz</u> has not been met. <u>Berkovitz</u>, 486 U.S. at 536-537. Having established that Section 1981 is a statute that mandates certain actions, and does not permit for discretion or choice, "then there is no discretion in the conduct for the discretionary function exception to protect." <u>Id</u>.; <u>Westfall</u>, 484 U.S. at 296-297. Thus, Ms. Jackson has sufficiently pleaded her claims, and neither Defendant Hackbush nor Defendant Mcelhaney qualify for discretionary act immunity, and the claims against them should be maintained and their motion denied. <u>Iqbal</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 548.

**E. Retaliation**

To establish a retaliation claim, a plaintiff must show that "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action." <u>Allen v. Vocatus LLC,</u> 645 F. Supp. 3d 1037, 1045 (D. Nev. 2022) (citing <u>Roces v. Reno Hous. Auth</u>., 300 F. Supp. 3d 1172, 1205 (D. Nev. 2018)); <u>see also</u> <u>Surrell v. Cal. Water Serv.,</u> 518 F.3d 1097, 1108 (9th Cir. 2008) (citing <u>Bergene v. Salt River Project Agric. Improvement and Power Dist.,</u> 272 F.3d 1136, 1140-41 (9th Cir. 2001)); <u>Univ. of Tex. Southwestern Med. Ctr. v. Nassar</u>, 570 U.S. 338, 352 (2013).

As detailed in the FAC, Ms. Jackson brought forth claims of discrimination based on her race and sex, and also requested a reasonable accommodation for her disabilities. These are protected activities and satisfy prong one of the retaliation claim. <u>See Williams v. Sevilla</u>, 2024 U.S. Dist. LEXIS 111133, at *9 (D. Nev. June 24, 2024) (holding that "For purposes of retaliation, an employee's protected activity includes opposing any act or practice by the employer that violates the ADA and pursuing rights guaranteed by the statute like requesting a reasonable accommodation."). Almost immediately following her claims for race and sex discrimination, as well as her request for an accommodation, Ms. Jackon was disciplined on

multiple occasions, transferred as a form of punishment, her contractual rights were violated, she was denied an accommodation and her pay and status were reduced. (FAC at ¶¶ 34, 37-45). These are all adverse employment actions, that satisfy prong two of the retaliation claim. Davis, 520 F.3d at 1089; Chuang, 225 F.3d at 1126). The temporal proximity of the adverse employment actions to Ms. Jackson engaging in protected activities, clearly demonstrates a causal link between her actions and the retaliation taken against her.[1] This, coupled with the fact that others outside of Ms. Jackson's protected classes, who did oppose claims of protected activity, being treated more favorably, supports and solidifies Ms. Jackson's claim for retaliation. (FAC at ¶¶ 46-51).

Therefore, Ms. Jackson's FAC is sufficiently pleaded to support her claim of retaliation and the motion should be denied. Allen, 645 F. Supp. 3d at 1045; Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 548.

///

///

///

///

///

///

///

///

---

[1] Temporal proximity can support an inference of retaliation. See, e.g., Ollier v. Sweetwater Union High Sch. Dist., 768 F.3d 843, 869 (9th Cir. 2014) (stating that temporal proximity can support causation in a Title IX retaliation case); Forsyth v. City of Buena Park, 691 F. App'x 363, 365 (9th Cir. 2017) (mentioning temporal proximity as circumstantial evidence of causation in an FLSA retaliation case).

22

**IV. CONCLUSION**

As demonstrated herein, Plaintiff Crystal Jackson has met her burden to plead her claims to a sufficient level to give the Defendants' notice of the basis for her claims. Therefore, based upon the foregoing, Plaintiff respectfully requests the Court **DENY** the Defendants' Motion to Dismiss the First Amended Complaint.

DATED this 24th day of April, 2026.

/s/*Ronald J. Dreher*_____
Ronald J. Dreher, Esq.
State Bar No. 15726
DREHER LAW
P.O. Box 6494
Reno, NV 89513
(775) 846-9804
ron@dreherlaw.net
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that on this date I served the foregoing document as follows:

_____    Deposited for mailing, first class postage prepaid;

_____    Deposited for mailing, certified/registered;

_____    Personal delivery to office;

___X___    CM/ECF electronic service

_____    E-mail

addressed as follows:

Kevin A. Pick, Esq.
Travis B. Lucia, Esq.
Sara K. Montalvo, Esq.
PO Box 30425
Reno, Nevada 89520
Attorneys for Defendant Washoe County School District

Thomas J. Donaldson
Francis C. Flaherty
Sue S. Matuska
1817 N. Stewart St., Ste 35
Carson City, Nevada 89706
*Attorneys for Defendant*
*Washoe Education Association*

DATED this 24th day of April, 2026.

/s/ *Ronald J. Dreher*_____
Ronald J. Dreher
NV Bar No. 15726
DREHER LAW
P.O. Box 6494
Reno, NV 89513
Telephone: (775) 846-9804
ron@dreherlaw.net
*Attorney for Plaintiff*